1 | THOMAS M. MCINERNEY, CA Bar No. 162055
tmm@ogletree.com
2 | CAROLYN B. HALL, CA Bar No. 212311
carolyn.hall@ogletree.com
3 | ROSHNI CHAUDHARI, CA Bar No. 310612
roshni.chaudhari@ogletree.com
4 | OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C.
5 | Steuart Tower, Suite 1300
One Market Plaza
6 | San Francisco, CA  94105
Telephone:    415.442.4810
7 | Facsimile:    415.442.4870

8 | Attorneys for Defendants
NRG ENERGY SERVICES LLC, NRG
9 | ENERGY SERVICES GROUP LLC and
NRG ENERGY, INC.
10

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| AARON TEJERO, JR., individually, and on behalf of other members of the general public similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NRG ENERGY SERVICES, LLC, a Delaware Limited Liability Company; NRG ENERGY SERVICES GROUP LLC, a Delaware Limited Liability Company; NRG ENERGY, INC., a Delaware Corporation; and DOES 1 through 10, inclusive<br><br>Defendants. | Case No.<br><br>**NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. §§ 1332, 1441, 1446 AND 1453**<br><br>[Contra Costa County Superior Court Case No. MSC18-01067]<br><br>[Filed concurrently with Defendants' Civil Cover Sheet, Corporate Disclosure Statement, and Declarations of Christine Zoino and Elizabeth Gillespie]<br><br>Complaint Filed: May 25, 2018<br>Date Removed:   July 12, 2108<br>Trial Date:         None Set |

Case No.
NOTICE OF REMOVAL

**TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA AND TO PLAINTIFF AND HIS ATTOREYS OF RECORD:**

**PLEASE TAKE NOTICE THAT,** pursuant to 28 U.S.C. §§ 1332(d), 1441, 1446, and 1453, Defendants NRG Energy Services LLC, NRG Services Group LLC and NRG Energy, Inc. (collectively "Defendants" or "NRG") hereby remove the above-entitled action from the Superior Court of the State of California for the County of Contra Costa to the United States District Court for the Northern District of California, under the Class Action Fairness Act ("CAFA"), pursuant to 28 U.S.C. §§ 1332(d), 1441, 1446, and 1453, on the grounds that: (1) Plaintiff Aaron Tejero, Jr. ("Plaintiff") is a "citizen of a State different from" any Defendant; (2) "the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs;" and (3) "the number of members of all proposed plaintiff classes in the aggregate" is more than 100. The foregoing facts were true when Plaintiff filed the Complaint, and remain true now.

Removal jurisdiction is therefore appropriate under CAFA as alleged in detail below.

## I.   PROCEDURAL BACKGROUND AND TIMELINESS OF REMOVAL

1. On May 25, 2018, Plaintiff filed an unverified complaint in the Superior Court of the State of California, commencing the action entitled *Aaron Tejero, Jr., individually, and on behalf of other members of the general public similarly situated, Plaintiff, v. NRG Energy Services, LLC, a Delaware Limited Liability Company; NRG Energy Services Group LLC, a Delaware Limited Liability Company; NRG Energy, Inc., a Delaware Corporation; and Does 1 through 10, inclusive*, Case No. MSC18-01067 ("Complaint"). A true and correct copy of the Complaint is attached as Exhibit A to this Notice of Removal. The Complaint alleges nine causes of action: (1) Violation of California Labor Code §§ 510 and 1198 (Unpaid Overtime); (2) Violation of California Labor Code §§ 1182.12. 1194, 1197, 1197.1 and 1198 (Unpaid Minimum Wages); (3) Violation of California Labor Code §§ 226.7, 512(a) and 1198 (Failure to Provide Meal Periods); (4) Violation of California Labor Code §§ 226.7 and 1198 (Failure to Provide Rest Periods); (5) Violation of California Labor Code §§ 226(a), 1174(d), and 1198 (Non-Compliant Wage Statements and Failure to Maintain Payroll Records); (6) Violation of California Labor Code §§ 201, 202, and 203 (Wages Not Timely Paid Upon Termination); (7) Violation of California

1  Labor Code § 2802 (Unreimbursed Business Expenses); (8) Violation of California Labor Code
2  §§ 17200, *et seq*. (Unlawful Business Practices); and (9) Violation of California Labor Code
3  §§ 17200, *et seq*. (Unfair Business Practices).

4      2.    On May 25, 2015, the Contra Costa County Superior Court set a Case Management
5  Conference for October 12, 2018 at 8:30 a.m. in Department 39. A copy of the Notice of Case
6  Management Conference is attached as <u>Exhibit B</u>.

7      3.    On June 12, 2018, Plaintiff served the Summons, Complaint, Civil Cover Sheet and
8  a Notice of Case Management Conference on Defendant NRG Energy, Inc. via its registered agent
9  for service of process. A true and correct copy of the documents served on NRG Energy, Inc.'s
10  registered agent is attached to this Notice as <u>Exhibit C</u>. A true and correct copy of the proof of
11  service of the Complaint on Defendant NRG Energy, Inc. is attached to this Notice as <u>Exhibit D</u>.

12      4.    On June 12, 2018, Plaintiff served the Summons, Complaint, Civil Cover Sheet and
13  a Notice of Case Management Conference on Defendant NRG Energy Services LLC via its
14  registered agent for service of process. A true and correct copy of the documents served on NRG
15  Energy Services LLC's registered agent is attached to this Notice as <u>Exhibit E</u>. A true and correct
16  copy of the proof of service of the Complaint on Defendant NRG Energy Services LLC is attached
17  to this Notice as <u>Exhibit F.</u>

18      5.    Based on information and belief, Plaintiff has not served the Complaint on
19  Defendant NRG Energy Services Group LLC.

20      6.    On July 12, 2018, Defendants timely filed an answer to Plaintiff's Complaint.[1]  A
21  true and correct copy of the Answer is attached to this Notice as <u>Exhibit G</u>.

22      7.    A defendant in a civil action has thirty (30) days from the date it is served with a
23  summons and complaint in which to remove the action to federal court. 28 U.S.C. § 1446(b);
24  *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347-48 (1999). As Defendants
25  NRG Energy, Inc. and NRG Energy Services LLC's registered agents for service of process were
26  served with the Summons and Complaint on June 12, 2018, this Notice of Removal is timely.

---

[1] Although as of the date of this Notice Plaintiff has not served the Complaint on NRG Energy Services Group LLC (*see* Paragraph 5), all named defendants answered the Complaint in state court.

## II. PLAINTIFF'S COMPLAINT IS REMOVABLE PURSUANT TO CAFA

8. The Court has original jurisdiction over this action pursuant to CAFA, 28 U.S.C. § 1332(d). Under CAFA, federal district courts have original jurisdiction over a class action if (1) it involves 100 or more putative class members, (2) any class member is a citizen of a state different from any defendant, and (3) the aggregated amount in controversy exceeds $5 million. *Id*. As discussed more fully below, because all such requirements are satisfied here, this action may be removed to this Court by Defendants pursuant to 28 U.S.C. §§ 1441, 1446 and 1453.

### The Number of Putative Class Members is Satisfied

9. Plaintiff purports to bring this action on behalf of "(a)ll persons who worked for Defendants as nonexempt, hourly-paid employees in California, within four years prior to the filing of this complaint until the date of trial ('Class')." (Complaint, ¶ 33.) Plaintiff also purports to bring this action on behalf a proposed subclass of "(a)ll persons who worked for Defendants as nonexempt, hourly-paid employees in California and who received at least one wage statement within one year prior to the filing of this complaint until the date of trial ('Subclass')." (Complaint, ¶ 34.)

10. Plaintiff alleges that "the class is estimated to be greater than one hundred (100) individuals." (Complaint, ¶ 38(a).)

11. There were 479 current and former non-exempt, hourly-paid employees who worked for Defendants in California from May 25, 2014 through July 9, 2018. (Declaration of Elizabeth Gillespie ("Gillespie Decl.") ¶ 4.)

12. There are 175 formerly employed members of the putative Class who separated their employment from NRG in the three years immediately preceding the filing of the Complaint through July 9, 2018. (Gillespie Decl. ¶ 4.)

13. There are more than 100 class members implicated in Plaintiff's Complaint. Therefore, the CAFA numerosity requirement is fulfilled. 28 U.S.C. § 1332(d).

### The Diversity of Citizenship Requirement is Satisfied

14. The minimal diversity requirement of 28 U.S.C. § 1332(d) is met in this action because the Court need only find that there is diversity between one putative class member and one

1  defendant. 28 U.S.C. §§ 1332(d)(2), 1332(d)(5), 1452(a). Plaintiff, a putative class member, is a
2  citizen of the State of California. (Complaint, ¶ 4.)  Members of the putative class, who are or were
3  employed in California, are presumed to be primarily citizens of the State of California.  For
4  diversity purposes, a person is a "citizen" of the state in which he is domiciled.  *Kantor v.*
5  *Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983).

6        15.    Pursuant to 28 U.S.C. § 1332(c), "a corporation shall be deemed to be a citizen of
7  every State and foreign state by which it has been incorporated and of the State or foreign state
8  where it has its principal place of business."  A corporation's headquarters is presumptively the
9  location of its "principal place of business . . ."  *Hertz v. Friend*, 559 U.S. 77, 78 (2010) ("[I]n
10 practice [a company's principal place of business] should normally be the place where the
11 corporation maintains its headquarters—provided that the headquarters is the actual center of
12 direction, control and coordination, i.e., the 'nerve center' . . ."); *Industrial Tectonics, Inc. v. Aero*
13 *Alloy*, 912 F.2d 1090, 1093 (9th Cir. 1990) (providing that where a corporation does business in a
14 number of states and does not conduct the substantial predominance of its business in any single
15 one, the state where corporate headquarters is located is the corporation's principal place of
16 business).

17       16.    The citizenship of a limited liability company for diversity purposes is the
18 citizenship of its members. *See Fadal Machining Ctrs., LLC v. Mid-Atlantic CNC, Inc.*, 464 F.
19 App's 672, 673 (9th Cir. 2012) ("For purposes of diversity jurisdiction, a limited liability
20 corporation is a citizen of all states where its members are citizens."); *Johnson v. Columbia Props.*
21 *Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006) (holding that "like a partnership, an LLC is a
22 citizen of every state of which its owners/members are citizens."); *McCawley v. Eckert Seamens*
23 *Cherin & Mellott, LLC*, CV 15-223(PA) (FFMx), 2015 U.S. Dist. LEXIS 3996, at *2-3 (C.D. Cal.
24 Jan. 13, 2015); *Cebrian v. Robert H. Ballard Rehab. Hosp.*, ED CV 13-2149 PA (FFMx), 2013
25 U.S. District LEXIS 173184, at *2-3 C.D. Cal. Dec. 6, 2013) (collecting cases).

26       17.    Defendant NRG Energy, Inc. is a corporation formed and organized in the state of
27 Delaware. (Declaration of Christine Zoino ("Zoino Decl.") ¶ 3.)  NRG Energy, Inc.'s
28 headquarters—which is its principal place of business and the center of its executive and

1  administrative functions—is in Princeton, New Jersey. (Zoino Decl., *id*.)  Consequently, Defendant
2  NRG Energy, Inc. is a citizen of Delaware and New Jersey for diversity purposes.
3       18.    Defendant NRG Energy Services LLC is a limited liability company formed and
4  organized in the State of Delaware. (Zoino Decl. ¶ 4.)  NRG Energy Services LLC's
5  headquarters—which is its principal place of business and the center of its executive and
6  administrative functions—is in Princeton, New Jersey. (Zoino Decl., *id*.)  NRG Energy Services
7  Group LLC, which is also a limited liability company organized in the state of Delaware with its
8  principal place of business in Princeton, New Jersey,[2] is the sole member of NRG Energy Services
9  LLC.  (Zoino Decl. ¶¶ 4, 5.)  The sole member of NRG Energy Services Group LLC is NRG
10 Energy, Inc.  (Zoino Decl. ¶ 5.)  Consequently, Defendant NRG Energy Services LLC is a citizen
11 of Delaware and New Jersey for diversity purposes.
12      19.    The citizenship of "Doe" defendants is disregarded for purposes of removal.
13 28 U.S.C. § 1441(b)(1).

14      **The Requisite $5 Million Amount in Controversy is Satisfied**

15      20.    To establish the propriety of removal under 28 U.S.C. § 1446(a), a defendant
16 seeking to remove a case to federal court must file a notice of removal "containing a short and
17 plain statement of the grounds for removal."  As the Supreme Court recently held, NRG's "notice
18 of removal need include only a plausible allegation that the amount in controversy exceeds the
19 jurisdictional threshold. Evidence establishing the amount is required by § 1446(c)(2)(B) only
20 when the plaintiff contests, or the court questions, the defendant's allegation." *Dart Cherokee*
21 *Basin Operating Co., LLC v. Owens*, 574 U.S. ___, 135 S. Ct. 547, 551, 190 L. Ed. 2d 495, 501
22 (2014) (the "short and plain" statement of the grounds for removal "need not contain evidentiary
23 submissions" as long as the allegation is "made in good faith").
24      21.    The Class Action Fairness Act, 28 U.S.C. § 1332(d) authorizes the removal of class
25 action cases in which, among other factors mentioned above, the amount in controversy for all
26 class members exceeds $5 million.  Plaintiff's Complaint is silent as to the total amount of

---

[2] As noted above in Paragraph 5, Plaintiff named NRG Energy Services Group LLC as a defendant, however, upon information and belief, as of the filing of this Notice of Removal, Plaintiff has not served Defendant NRG Energy Services Group LLC with the Complaint.

monetary relief sought. However, the failure of the operative complaint to specify the total amount of monetary relief sought by Plaintiff does not deprive this Court of jurisdiction. *See White v. J.C. Penny Life Ins. Co.*, 861 F. Supp. 25, 26 (S.D. W. Va. 1994) (observing that defendant may remove suit to federal court notwithstanding the failure of plaintiff to plead a specific dollar amount in controversy; if the rules were otherwise, "any Plaintiff could avoid removal simply by declining . . . to place a specific dollar claim upon its claim."). Defendants need only establish by a preponderance of the evidence that Plaintiff's claim exceeds the jurisdictional minimum. *See Rodriguez v. AT&T Mobility Servs., LLC*, 728 F.3d 975, 977 (9th Cir. 2013) (citing *Standard Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345 (2013)); *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996); *Singer v. State Farm Mut. Auto Ins. Co.*, 116 F.3d 373, 376 (9th Cir. 1997); *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 699 (9th Cir. 2007) (in CAFA removal actions, where the amount in controversy is unclear from the face of the complaint, defendant must produce underlying facts showing it is more likely than not that the amount in controversy exceeds $5 million).

22. While Defendant denies the validity of Plaintiff's claims and requests for relief thereon, the facial allegations in Plaintiff's Complaint and his claimed damages are in excess of the jurisdictional minimum. *See Rodriguez*, 728 F.3d at 977 (citing *Standard Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345 (2013)); *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 298 (5th Cir.1999) (finding that facts presented in notice of removal, combined with plaintiff's allegations, sufficient to support finding of jurisdiction); *DeAguillar v. Boeing Co.*, 47 F.3d 1404, 1412 (5th Cir.1995) (stating that "defendant can show by a preponderance of the evidence that the amount in controversy is greater than the jurisdictional amount"); *accord Gaus v. Miles, Inc.*, 980 F.2d 564, 566-67 (9th Cir. 1992); *White v. FCI USA, Inc.*, 319 F.3d 672, 674 (5th Cir.2003) (facially apparent from the lengthy list of damages, combined with a claim for attorney's fees, that plaintiff's claim exceeded the jurisdictional threshold).

23. In determining the amount in controversy for CAFA purposes, all potential damages based on the claims in the complaint, as well as attorney's fees, are included. *See Guglielmino*, 506 F.3d at 701 (unspecified attorney's fees are appropriately counted toward the amount in

controversy in CAFA removal actions); *Muniz v. Pilot Travel Centers LLC*, No. CIV. S-07-0325 FCD EFB, 2007 WL 1302504, at *3 (E.D. Cal. May 1, 2007) ("In measuring the amount in controversy, a court must assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiffs on all claims made in the complaint."). As set forth and described in more detail below, the amount in controversy is at least **$6,321,482**, which satisfies CAFA's jurisdictional prerequisite.

| Summary of Estimated Amount in Controversy | | |
|---|---|---|
| Claim | Date Range | Amount in Controversy |
| Missed Meal Breaks | 5/25/2014 – 7/9/2018 | $1,993,641 |
| Missed Rest Breaks | 5/25/2014 – 7/9/2018 | $1,993,641 |
| Wage Statement Penalties | 5/25/2017 – 7/9/2018 | $696,200 |
| Waiting Time Penalties | 5/25/2015 – 7/9/2018 | $1,638,000 |
| Total Potential Amount in Controversy: | | **$6,321,482** |

24. This lawsuit arises from Plaintiff's employment at NRG. Plaintiff's Complaint asserts causes of action against NRG for alleged violations of California Labor Code §§ 201, 202, 203, 226, 226.7, 510, 1174(d), 1182, 1194, 1197, 1197.1, 1198, and California Business and Professions Code § 17200. (Complaint, generally.) Plaintiff seeks damages for unpaid minimum wage and overtime wages, statutory premium pay for missed meal periods and rest breaks, restitution for unpaid overtime wages,[3] damages for unreimbursed business expenditures, damages for unpaid final wages, failure to furnish accurate itemized wage statements, waiting time penalties, and attorneys' fees, on behalf of himself and the putative class members for the alleged violations of the foregoing statutes. (Prayer for Relief.) Plaintiff seeks certification of a class that would include "[a]ll persons who worked for Defendants as nonexempt, hourly-paid employees in

---

[3] Plaintiff did not provide sufficient factual allegations in his Complaint for Defendants to estimate the amount in controversy for hours that were allegedly worked but not paid.

California, within four years prior to the filing of this complaint until the date of trial." (Complaint, ¶ 33.) Plaintiff also seeks certification of a subclass that would include "[a]ll persons who worked for Defendants as nonexempt, hourly-paid employees in California and who received at least one wage statement within one year prior to the fling of this complaint until the date of trial." (Complaint ¶ 34.)

25. Based on a preliminary review of human resources data for California non-exempt hourly paid employees who worked for NRG, there were 479 employees during the putative class period from May 25, 2014 through July 9, 2018. (Gillespie Decl. ¶ 4.) These 479 employees provided services during at least 51,119 weeks from May 25, 2014 through July 9, 2018. (Gillespie Decl. ¶ 5.)

26. NRG's records indicate that Plaintiff's hourly rate was $39.00. (Complaint ¶ 4; Gillespie Decl. ¶ 7.) Plaintiff and other members of the putative class typically worked five (5) days per week, and at least eight (8) hours per day. (Gillespie Decl. ¶ 6.)

27. Based solely upon (i) premiums for one hour at the regular rate of compensation for each meal and rest period allegedly denied; (ii) waiting time penalties; and (iii) wage statement statutory penalties;[4] the associated potential amount in controversy, as alleged and claimed by Plaintiff is as follows:

**A. Failure to Pay Premiums for Missed & Improper Meal Periods**

28. Plaintiff alleges that "Plaintiff and class members were only able to take meal breaks in between jobs, often while driving to the next site" and that "Plaintiff would work six (6) or more hours without being able to take a meal break, and when he did, they would be cut short and/or interrupted by calls from supervisors." (Complaint, ¶¶ 46, 64.) Plaintiff alleges that "supervisors and management contacted Plaintiff and class members on their cell phones during their meal periods in order to monitor their progress on the day's assignments." (Complaint, ¶¶ 47,

---

[4] The Complaint does not allege sufficient facts for Defendants to make a good faith estimate of the damages Plaintiff alleges as to unpaid wages and/or overtime related to allegedly working through meal periods, or for Plaintiff's overtime claim generally. Likewise the Complaint does not allege detailed facts regarding the expense reimbursement claim. Although Defendants have not included these estimates in supporting their removal, such amounts are clearly in controversy and would provide further support for jurisdiction under CAFA.

1  65.) Plaintiff alleges that NRG lacks any established procedure to track break violations and pay
2  the required break penalty. (Complaint, ¶¶ 68-70.) Plaintiff alleges that NRG failed to provide a
3  second 30-minute meal period for his shifts worked in excess of 10 hours. (Complaint, ¶ 67.)

4       29.    While Plaintiff's allegations support a 100% violation rate, NRG conservatively
5  assumes for the purpose of this calculation that only 20% of meal breaks had any violation. NRG
6  assumes for the purpose of this calculation that each putative class member was not provided a
7  compliant duty-free meal period at least one time per week. Based on this assumption, the putative
8  class size, Plaintiff's $39.00 hourly pay rate, the amount in controversy for the meal period
9  premium pay for this claim is $1,993,641. This is calculated at one missed meal period per week x
10 $39.00 per hour x 51,119 work weeks. *See Tompkins v. C & S Wholesale Grocers, Inc.*, 2011 WL
11 2710288 (E.D. Cal. 2012) (finding that a four-year statute of limitations applies to meal period
12 claims pursuant to Labor Code Section 226.7 at the same time as an unfair competition claim
13 pursuant to Cal. Bus. & Prof. Code § 17200 because "the additional hour of pay" required as a
14 premium wage is a restitutionary wage, which is recoverable under the Unfair Competition Law);
15 *see also Doe v. D.M. Camp & Sons,* 2009 WL 921442, at *13 (E.D. Cal. Mar. 31, 2009) (same)
16 (citing *Tomlinson v. Indymac Bank, F.S.B*, 359 F.Supp.2d 891, 898 (C.D. Cal. 2005).

17              **B. Failure to Pay Premiums for Missed & Improper Rest Breaks**

18      30.    Plaintiff alleges that NRG's "policies and/or practices, including the requirement
19 that employees carry company-issued cell phones at all times, prevented Plaintiff and class
20 members from being relieved of all duty in order to take compliant rest breaks." (Complaint, ¶ 76.)
21 Plaintiff alleges that NRG "engaged in a systematic, company-wide practice and/or policy of not
22 paying rest period premiums owed when rest periods are not provided." (Complaint, ¶ 77.)

23      31.    While Plaintiff's allegations support a 100% violation rate, NRG conservatively
24 assumes for the purpose of this calculation that only 20% of rest breaks had any violation.[5] NRG

25

26 [5] This assumption, used for both meal and rest break violations, results in a 20% violation rate out of the days for which the putative class members worked. Nevertheless, there is authority that
27 provides that where a plaintiff does not allege facts specific to the circumstances of allegedly missed meal and/or rest periods, the defendant may use a 100% violation rate in calculating the
28 amount in controversy. *See, e.g.*, *Muniz v. Pilot Traveler Centers LLC*, No. CIV .S-07-0325, FCD EFB, 2007 WL 1302504 (E.D. Cal. May 1, 2007) (citing and quoting *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987)) ("As these allegations reveal, plaintiff includes no fact-specific

assumes for the purpose of this calculation that each putative class member was not authorized a paid rest break at least one time per week. Based on this assumption, the putative class size, Plaintiff's $39.00 hourly pay rate, the amount in controversy for the rest break premium pay for this claim is $1,993,641. This is calculated at one missed rest break per week x $39.00 per hour x 51,119 weeks.

### C. Failure to Issue Accurate Wage Statements

32. Plaintiff claims that Defendants failed to furnish Plaintiff and the putative class with accurate itemized wage statements. (Complaint, ¶¶ 79-86.) Labor Code section 226(e) provides for the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurred and one hundred dollars ($100) for each subsequent pay period, up to a maximum of $4,000 for each putative class member. The applicable statute of limitations to recover penalties under California Labor Code section 226(e) is one year. Cal. Code Civ. Proc. § 340(a). Since December 27, 2014, NRG has paid non-exempt employees every two weeks. (Gillespie Decl. ¶ 7.) Accordingly, if the allegations in the Complaint, and Plaintiff's legal theories are correct, any individual employed by NRG in California on or after May 25, 2017 is entitled to penalties under Labor Code section 226(e). Given that there are a number of claims in the Complaint that could potentially trigger a wage statement penalty, such as minimum wage and overtime violations, assuming that any bi-weekly pay period from May 25, 2017 through July 9, 2018 would potentially trigger a penalty payment, the potential amount in controversy due to alleged wage statement violations is $696,200. This is calculated at 252 employees x $50 for the first pay period violation and 252 employees x $100 for 6,836 additional pay periods.

### D. Waiting Time Penalties

33. Plaintiff claims waiting time penalties under Section 203 of the Labor Code. As set forth in *Bolton v. U.S. Nursing Corp.*, No. C 12–04466 LB, 2012 WL 5269738, at *5 (N.D. Cal.

---

allegations that would result in a putative class or violation rate that is discernibly smaller than 100%, used by defendant in its calculations. Plaintiff is the 'master of [her] claim[s],' and if she wanted to avoid removal, she could have alleged facts specific to her claims which would narrow the scope of the putative class or the damages sought."). Here, although NRG has not included the entire 100% violation rate that is allowable as estimations in support of removal—as only 20% is sufficient to meet the amount in controversy—these amounts are clearly in controversy and would further support jurisdiction under CAFA.

1  Oct. 23, 2012), an employer may establish the amount in controversy for a waiting time penalty
2  claim pursuant to California Labor Code section 203 by: (1) assessing a minimum hourly rate
3  based on the regular rate applicable to the putative class; (2) multiplying the hourly rate by the
4  average hours worked per shift; (3) multiplying that number by the number of days in the waiting
5  period; and (4) multiplying that number by the number of terminated putative class members.
6  Given that there are a number of causes of action in the Complaint that could potentially trigger a
7  waiting time penalty, assuming that each terminated employee would have at least one instance
8  that would trigger the waiting time penalty and that there were 175 terminations on or after May
9  25, 2015 and on or before July 9, 2018, the total estimated potential exposure due to waiting time
10  penalties is $1,638,000. This is calculated at $39.00 per hour x 8 hours x 30 days x 175 terminated
11  employees.

### E. Attorneys' Fees

13  34.  In addition to the foregoing, Plaintiff seeks an award of attorneys' fees and costs.
14  (Prayer for Relief.) A realistic estimate of Plaintiff's attorneys' fees is 25% of the total recovery.
15  *See Muniz v. Pilot Travel Centers LLC*, 2007 WL 1302504, at *4 n.8 (noting that "in California,
16  where wage and hour class actions have settled prior to trial for millions of dollars, it is not
17  uncommon for an attorneys' fee award to be in the realm of 25% to 30% of the settlement . . . .").
18  Because the amount in controversy just for Plaintiff's claim for waiting time penalties (which
19  represents only a portion of all of Plaintiff's possible claimed recovery for which attorneys' fees
20  are available) is approximately $1,638,000, as detailed above. Plaintiff's attorneys' fees for
21  waiting time penalties must be estimated as approximately $409,500, which is the aggregate of
22  25% of the amount in controversy for that claim alone. It is well established that in determining
23  whether a complaint meets the amount in controversy requirement, the Court should consider
24  attorneys' fees. *Bell v. Preferred Life*, 320 U.S. 238 (1943); *Goldberg v. C.P.C. Int'l, Inc.*, 678
25  F.2d 1365, 1367 (9th Cir. 1982) (attorneys' fees may be taken into account to determine
26  jurisdictional amounts); *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696 at 701 (holding that
27  attorneys' fees must be included in determining the amount in controversy in CAFA removal
28  actions); *Sanchez v. Wal-Mart Stores, Inc.*, 2007 WL 1345706 at *2 (finding that, even if a more

1  conservative estimate of compensatory damages totaling less than $5 million was appropriate, the
2  addition of attorneys' fees should be included in determining the amount in controversy).
3  Nevertheless, NRG does not include an estimate of a 25% recovery for attorney's fees sought,
4  despite the fact that this amount would represent a considerable proportion of any recovery by
5  Plaintiff for damages and penalties associated with his claims, which would clearly add
6  significantly to the amount in controversy for CAFA purposes.

7        35.    Based on the allegations in the Complaint; the damages and penalties (exclusive of
8  attorneys' fees sought by Plaintiff); and the number of putative class members, as explained in
9  detail above, the amount in controversy is at least **$6,321,482**, which satisfies CAFA's
10 jurisdictional prerequisite.  Although NRG specifically denies Plaintiff's claims and further denies
11 that Plaintiff will recover the relief he seeks, it is clear from the scope of the relief sought that the
12 amount in controversy arising from the relief Plaintiff seeks exceeds the $5,000,000 jurisdictional
13 threshold of 28 U.S.C. § 1332(d).

14 **CAFA Exceptions Are Not Applicable**

15       36.    Further, while 28 U.S.C. §§ 1332(d)(3) & (4) recognizes situations where this Court
16 may or must decline jurisdiction despite the fact that the minimal diversity and the amount in
17 controversy requirements of § 1332(d)(2) are satisfied, none of those requirements are met here.
18 *See* 28 U.S.C. §§ 1331(d)(3) & (4).

19 **SATISFACTION OF PROCEDURAL REQUIREMENTS**

20       37.    In accordance with 28 U.S.C. § 1446(a), this Notice of Removal is filed in the
21 District in which the action is pending. The Contra Costa County Superior Court is located within
22 the Northern District of California.  Therefore, venue is proper in this Court because it is the
23 "district and division embracing the place where such action is pending."  28 U.S.C. § 1441(a).

24       38.    In accordance with 28 U.S.C. § 1446(a), copies of all process, pleadings, and orders
25 served upon Defendants are attached as Exhibits to this Notice.

26       39.    In accordance with 28 U.S.C. § 1446(d), a copy of this Notice is being served upon
27 counsel for Plaintiff, and a notice will be filed with the Clerk of the Superior Court of California
28

for the County of Contra Costa.  Notice of Compliance shall be filed promptly afterwards with this Court.

40. In the event this Court has a question regarding the propriety of this Notice of Removal, NRG respectfully requests that the Court issue an Order to Show Cause so that NRG may have an opportunity to supplement a more detailed brief outlining the basis for this removal.

WHEREFORE, Defendants removes the above-captioned action to the United States District Court for the Northern District of California.

DATED:  July 12, 2018

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By: */s/ Carolyn B. Hall*
Thomas M. McInerney
Carolyn B. Hall
Roshni Chaudhari
Attorneys for Defendants
NRG ENERGY SERVICES LLC, NRG ENERGY SERVICES GROUP LLC AND NRG ENERGY, INC.

34780421.1