UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

AARON TEJERO,
    Plaintiff,

v.

NRG ENERGY SERVICES LLC, et al.,
    Defendants.

Case No. 18-cv-04188-PJH

**ORDER GRANTING MOTION TO REMAND**

Re: Dkt. No. 21

    Plaintiff Aaron Tejero's motion to remand came on for hearing before this court on November 14, 2018. Plaintiff appeared through his counsel, Liana Carter and Molly DeSario. Defendants NRG Energy Services LLC, NRG Energy Services Group LLC, and NRG Energy, Inc. appeared through their counsel, Thomas McInerney. Having read the papers filed by the parties and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby GRANTS plaintiff's motion, for the reasons stated at the hearing and as briefly summarized below.

    This is a putative wage and hour class action filed in Contra Costa County Superior Court on May 25, 2018. Defendants employed plaintiff as a non-exempt, hourly paid Solar Tech III from approximately March 14, 2017, to February 2, 2018. Compl. ¶ 4. On July 12, 2018, defendants removed this action to federal court asserting that federal jurisdiction existed based on the Class Action Fairness Act ("CAFA"). CAFA "gives federal courts jurisdiction over certain class actions, defined in § 1332(d)(1), if the class has more than 100 members, the parties are minimally diverse, and the amount in controversy exceeds $5 million." Dart Cherokee Basin Operating Co., LLC v. Owens, 135 S. Ct. 547, 551 (2014). The parties agree that the only issue is whether defendants

have met their burden to show CAFA's $5 million dollar amount-in-controversy requirement has been met.

Though the complaint alleges nine causes of action, defendants' attempt to meet the $5 million threshold relies on just four causes of action: (1) Violation of California Labor Code §§ 226.7, 512(a) and 1198 (Failure to Provide Meal Periods); (2) Violation of California Labor Code §§ 226.7 and 1198 (Failure to Provide Rest Periods); (3) Violation of California Labor Code §§ 226(a), 1174(d), and 1198 (Non-Compliant Wage Statements and Failure to Maintain Payroll Records); (4) Violation of California Labor Code §§ 201, 202, and 203 (Wages Not Timely Paid Upon Termination). Defendants contend that those four causes of action put a total of $5,512,248 in controversy, with the meal and rest period claims accounting for $3,547,362 of that amount. Defendants reached the latter figure by "conservatively" assuming one meal period and one rest period violation per week per putative class member.

Fatal to defendants' contention, however, is the fact that defendants' proposed violation rate is essentially speculative because it is unsupported by any evidence or allegation in the complaint. Speculation does not meet defendants' burden to show CAFA's amount in controversy requirement has been met.

"A defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." Dart Cherokee, 135 S. Ct. at 554 (citing 28 U.S.C. § 1446(a) ). But if, after removal, the plaintiff contests the defendant's allegations regarding the amount in controversy, both parties submit proof and the court must decide by a preponderance of the evidence that the amount in controversy requirement is met. Id. at 553-54 (citing 28 U.S.C. § 1446(c)(2)(B) ). To determine the amount in controversy, courts first look to the complaint. Ibarra v. Manheim Invs., Inc., 775 F.3d 1193, 1197 (9th Cir. 2015). If no damages are stated, or the defendant believes the claimed damages are understated, the defendant seeking removal bears the burden of showing "the aggregate amount in controversy exceeds $5 million[.]" Id. "[W]hen the defendant's assertion of the amount in controversy is

1 challenged by plaintiffs in a motion to remand . . . CAFA's requirements are to be tested
2 by consideration of real evidence and the reality of what is at stake in the litigation, using
3 reasonable assumptions underlying the defendant's theory of damages exposure." Id. at
4 1198. But "when the defendant relies on a chain of reasoning that includes assumptions
5 to satisfy its burden of proof, the chain of reasoning and its underlying assumptions must
6 be reasonable ones." LaCross v. Knight Transp. Inc., 775 F.3d 1200, 1202 (9th Cir.
7 2015).

Remand is unwarranted if, after reviewing the pleadings and evidence, a court finds it is more likely than not the plaintiff put over $5 million in controversy. See Abrego Abrego v. The Dow Chem. Co., 443 F.3d 676, 689 (9th Cir. 2006). But where, as here, the pleadings and evidence do not establish the threshold jurisdictional amount by a preponderance of the evidence, the case must be remanded to state court. Id.

As an initial matter, the only evidence defendants submitted—a declaration from a human resources director—does not support any particular violation rate. See Dkt. 23-1. That declaration only provides evidence about the total number of putative class members and the total number of weeks worked during the class period, as well as attesting that the putative class members "regularly work[ ] 5 days per week [ ] [for] at least 8 hours per day." Id. ¶ 7. But the fact that putative class members may have been eligible to receive rest and meal periods does not say anything about whether putative class members failed to receive those breaks or how often that failure occurred.

Likely recognizing that their evidence is lacking, defendants primarily argue that the complaint's allegations support a 100% violation rate—i.e., class members never received the required meal and rest periods—and therefore defendant's proposed violation rate is reasonable and conservative. The court disagrees. Defendants first point to the complaint's allegation that plaintiff and putative class members were "only able to take a meal break in between jobs, often while driving to the next site" and that the named plaintiff "would work six [ ] or more hours without being able to take a meal break, and when he finally did, they would be short and/or interrupted by calls from

3

1  supervisors." Compl. ¶ 64.  In context, however, that paragraph alleges that those

2  conditions occurred when plaintiff's employer was "understaff[ed], which would occur

3  "[f]or months at a time." Id.  Even if that were sufficient to show meal and rest period

4  violations occurred every day for "months at a time," it does not come close to supporting

5  an inference that violations occurred every day during the entire four-year class period.

6  See id. (defining relevant subclass as "All persons who worked for Defendants . . . within

7  four years prior to the filing of" the complaint).  Further, defendants have failed to explain

8  why a meal break could not properly occur "in between jobs"—that's when meal breaks

9  are supposed to occur.  And "often while driving" is not equivalent to "always while

10 driving."

11     Defendants next argue that the complaint alleges the missed meal and rest

12 periods were the result of defendants' policies.  While that may be true, that alone does

13 not support a 100 percent violation rate or, for that matter, any other violation rate.  "[T]he

14 Ninth Circuit [has] held that 'a pattern and practice of doing something does not

15 necessarily mean always doing something, and that under such circumstances, the

16 defendant 'bears the burden to show that its estimated amount in controversy relied on

17 reasonable assumptions.'" Garza v. Brinderson Constructors, Inc., 178 F. Supp. 3d 906,

18 911 (N.D. Cal. 2016) (quoting Ibarra).  The allegations defendants cite (and the

19 complaint's other policy-related allegations) are at best vague as to the frequency of the

20 missed meal and rest periods.  For example, paragraph 76 concludes "As a result [of

21 defendants' policies and/or practices], plaintiff and class members worked [qualifying]

22 shifts . . . without receiving all uninterrupted ten [ ] minute rest periods to which they were

23 entitled." See also, e.g., Compl. ¶ 66 (same for meal periods).  But an employee's

24 alleged failure to receive "all" rest and meal periods she is entitled to does not equate to a

25 failure to receive "any" rest or meal periods.  Nor does it equate to missing one rest

26 period and one meal period per week.  See Garcia v. Lifetime Brands, Inc., No. EDCV

27 15-1924-JLS (SPx), 2016 WL 81473, *3 (C.D. Cal. Jan. 7, 2016) (rejecting defendant's

28 100% violation rate based on complaint's alleging a "uniform policy and systematic

4

scheme"); Garcia v. Wal-Mart Stores Inc., 207 F. Supp. 3d 1114, 1124 (C.D. Cal. 2016) (same).

## CONCLUSION

For the foregoing reasons, the court finds that defendants have not met their burden of showing by a preponderance of the evidence that the amount in controversy exceeds $5 million. Accordingly, the court GRANTS plaintiff's motion and REMANDS the action to the Contra Costa County Superior Court.

**IT IS SO ORDERED.**

Dated: November 16, 2018

_____
PHYLLIS J. HAMILTON
United States District Judge